The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the time is allotted to counsel. The first case today is United States v. George Sepulveda, appeal number 202193. Attorney Dimitri, please introduce yourself for the record and proceed with your argument. Good morning, William Dimitri on behalf of the appellant. Mr. Dimitri, before you begin, I just want to say a word of welcome to my new colleague on the First Circuit, Judge Halpe, who is sitting with us today, who sat with us earlier following his confirmation, but it's my first chance to sit with him. So I just want to extend a welcome and look forward to serving with you. I echo those sentiments, Judge Barron. Okay, Mr. Dimitri, begin your argument. Thank you and welcome, Your Honor. Attorney William Dimitri, on behalf of the appellant, Judge Sepulveda, as this court knows, this matter is here on an appeal from a petition for a compassionate release filed by Mr. Sepulveda back in 2019. This court has dealt with these issues before, especially since COVID, there have been frequent filings for compassionate release, not only relative to COVID, but also as to other matters. This particular matter has nothing to do with COVID. There are no claims for release based on that. Mr. Sepulveda's petition focused on different grounds, including his age at the time of the offenses for which he was convicted, failure to provide a hearing, and length of sentence in general, along with his youth. In any event, one of the issues that seems to be dominant in these matters is the application of 1B1.13. If I'm reading the district court correctly, that's not a concern here, though, because I understand the district court to have rejected the request for compassionate release, even assuming that guideline and application note is not a limitation on the district court's discretion in this case. Yes, the district court did deny the petition. So maybe just for the purpose of the argument, at least to me, it would be most helpful if you just made the argument to us as to how the district court erred, notwithstanding the fact that it seemed to accept your contention that that guideline was not a limitation on her discretion. As I understand it, she just made a discretionary determination, given this record and these facts, your client was not entitled to compassionate release, not that this type of ground in principle can't be a ground for compassionate release. I understood, Your Honor. I was addressing it because the government did address it in its brief. Okay, so moving forward then, Judge, the appellant here does not argue, as the government suggests, that there was some requirement that there be a reduction of sentence based on his age. He did argue, and he was pro se at the time, that it was a relevant and credible meritorious factor that the court should have considered at the time he filed his petition for compassionate release. When he was convicted back in 1997, he had already been held for a couple of years. I believe he was indicted back in 1995 on various crimes relative to his involvement in the Latin Kings. He was convicted, as this court knows, of recall violations, including murder. On appeal, it is his contention that the district court had in basically sweeping aside any serious consideration of his claims. He was 20. Well, Mr. D'Amico, you said district court gave no serious consideration. The district court wrote a reasoned order. This isn't a one-line denial, and the district court specifically cited his age and said, yes, he was young, but he had risen to a position of being the anchor or the leader of the Latin Kings. So I'm going to take that into account. Understood, Your Honor. Certainly, based on comparing the cases, to say the Cruz case and the Ramsey case, he was found and was charged as the leader or the anchor of the Latin Kings at the time of his conviction. But similar to Cruz and similar to Ramsey, he was relatively young, 19, 20 at the time of his conviction, a little younger when the offenses were committed. And although the court did issue a decision, Mr. Sepulveda had asked for a hearing to develop his argument relative to this youth matters, to the youth matters sort of argument. Mr. Dimitri, we have said, I think it was in the United States against McAndrew, that on motions in criminal cases, hearings are the exception, not the rule. I've searched to see if I could find a compassionate release case where there was ever a finding of reversible error because the district court refused to hold a hearing, an evidentiary hearing. And I haven't been able to find one. Have you been able to find one? These cases are routinely decided on the papers. I agree, Your Honor, and I was unable to find one. But I think in order to develop his claim of youth at the time, although he attempted to utilize the testimony from Dr. Steinberg, that could not be fully developed without a hearing, could not be fully developed without giving him an opportunity to be assessed, an opportunity to present evidence relative to that claim. Excuse me, let me ask you a preliminary question. The local rules of the District of Rhode Island provide that a hearing has to be requested in writing. Was there a written request for a hearing made in this case? My recollection of the papers that Mr. Sepulveda filed was, yes, there was a request for a hearing. All right. The district court seemed to say that the record, in her view, was sufficient for her to be able to make an assessment on youth, given that she understood the nature of the claim. Was there a proffer made as to what would have been provided at the hearing that was disallowed so that we could have some basis for determining why the denial of the hearing would have been prejudicial? No, there was no proffer, Your Honor, just that there was a request for a hearing. Four minutes remaining, four minutes. It just seems somewhat difficult when there was a pointing to evidence of an expert about youth criminality in the sense of a reference to the testimony that was relied on in another case and a request for a hearing to develop it, but no elaboration about how the development could have made a difference in the case. And then you have a district court saying, I'm aware of the contention, and I feel like on this record I can assess it. It's hard to see on an abusive discretion standard where the error is. I understand the court's position. And, again, I just reiterate Mr. Sepulveda was pro se. He did not proffer any argument as to why a hearing would be necessary. I recall specifically in this case, because I had some peripheral involvement in it back in 1997, and not from Mr. Sepulveda, but Judge Schlici sat on the case. She was well aware of the facts. Certainly she sat for 44 days of trial, Mr. Sepulveda, and so she certainly was intimately familiar with the facts surrounding the case. But I suggest that she had a lack of knowledge as to his progression from a young thug, if you will, to someone who now is attempting to better himself week by week, month by month, year by year. Certainly the government argues that, well, he didn't disavow the Latin kings until 2004, but that was only seven years after his convictions. Counsel, isn't there a paper trail, and it's a very lengthy paper trail, because your client has, over the years, aside from his appeals, filed abuses, all sorts of motions, post-conviction motions, until this motion. So there is a history. The judge can easily see all that, and it's all part of the record. It's accessible. I understood the last part. I might have missed the first part. Yes, certainly he has filed numerous motions over the years for relief, and I'm sure the court is well aware of the history there as well. All those arguments get rehashed in this motion, which Judge Lisi denied as well. Yes, yes. I'm familiar with some of his earlier motions, Your Honor, the more recent ones. I know the government had detailed some motions that were earlier than these, unrelated to the youth argument, but certainly the court was and would have been well aware of those, yes. How long has the defendant served the life sentence thus far? He's been 27 years, Your Honor. Well, he's been indicted in 1995, resolved without bail. So, yes, 27 years he's been locked up. Let me also ask you, Counsel, you seem to be asking in your client's brief that the rule of Roper v. Simmons be extended to your client. He was 19 at the time of the commission of these crimes. But are you asking specifically for that to occur? He's not under 18, but close to that. Is that an argument you're making? No, Your Honor, I'm not making an argument under Roper or Miller that he was under 18. At the time of the offenses that he committed, he was still relatively youthful. What you're asking is he's not under 18, but he's only 19, so an analogous rule should apply. Am I correct? You're asking for that? A somewhat similar type of argument based on Cruz and Ramsey, yes, Your Honor. And that type of argument would entitle you to an evidentiary hearing or some sort of further consideration? Is that what you're saying? Exactly, Judge. That's time. Thanks. Thanks very much. Thank you, Your Honor. Thank you for your time. At this time, Mr. Dimitri, if you could please mute your audio and your video. Attorney Zurier, if you could unmute your device and introduce yourself to begin argument. Yes, may it please the Court. Lauren Zurier for the United States. Because of the assumptions that the District Court made in this case, whatever somewhat controversial and difficult legal questions are lurking in the background case need not be decided by this Court. For example, whether or not the length of a sentence could ever be an extraordinary and compelling circumstance justifying release, you don't have to decide that because the judge assumed it could. And what you're left with at that point is, as the government has argued in its brief, a series of factors which are rather duplicative because they surface not only in the extraordinary and compelling aspect of the analysis the District Court did, but also in the 3553A analysis. They're factors related to rehabilitation, the length of a sentence, the age the defendant was now and the progress he's made versus when he was convicted and the progress he's made from then to now. And the judge, because she tried the case, she was well familiar with how he protested his innocence for almost 20 years. Yes, Your Honor? Attorney Zurier, if I understand it, at the time of the conviction and the time of sentencing, there was a mandatory requirement to impose the sentence that was imposed, or is that wrong? Yes, that is correct. So, if this defendant were sentenced today, under the current legal regime, the District Court would have discretion as to what sentence to impose, correct? That is correct, however... Do we know what the guidelines recommended range for the sentence would be today given a discretionary regime? Yes, life. The guidelines recommendation would be life? The government has argued in its brief and cited the relevant guidelines. And is that disputed by the defendant or not? No, and not only that, but if you go back and look at the original sentencing record, if this sentence had been imposed today, given the long rant the defendant made about how none of this was his fault at the sentencing and given the comments Judge Lisi made when she imposed the sentence, I think it's pretty undeniable that she would have imposed a life sentence given the nature of his crimes, regardless of whether the sentence was mandatory or suggested. So, this is not a case in which the change in the law itself is an independent factor that I might bear on whether it's an extraordinary circumstance? Your Honor, the government's position on that... I know that your position is that that may not matter, but I'm just saying... No. Oh, go ahead. The government's position on whether, on how you consider changes in the law is that if they factor it all, they should factor in at the 3553A analysis. It's much more appropriate for them to factor in there than to... Ms. Zuria, if we do not limit ourselves to the government's position, and if we say, if we were prepared to consider that a change in the sentencing law might be a part of the calculus on extraordinary and compelling reason, in this particular case, that still wouldn't help the defendant. Absolutely not. That's correct. So, we don't have to go beyond that and get to your further point. I understand the government would like us to adopt a more restrictive view, but we don't have to do it in this case. No, you don't. The judge did all the hard work for you by assuming all the legal questions favorable to the defendant, and then on the merits of the claim, saying that in this case, a life sentence... The reason I ask is the one feature, if I'm reading the district court's opinion right, and I don't mean this necessarily as a fault of the district court, it just seems to be a fact, the district court did not address, if I'm following it, the change in law point. I think she addressed it indirectly when she looked at the length of the sentence, because when she did her 3553A analysis, she balanced the length of the sentence against all the other factors, and while she didn't directly say the change in the law is or is not relevant, I think implicitly she addressed it because she said, this guy still deserves a life sentence. I see, okay. And it came out of the wash at the end. And at the time she made that statement, the papers before her would have included the government's argument that even under the new regime, the recommended guideline sentence would have been life. Oh, I think that the government had argued all along that he deserved life, and there were also statements from the victim's family that they had expected him to serve life... Five minutes remaining. ...from the time the sentence was imposed until now. And that's another thing I think that should be noted. The defendant nowhere in his appellate brief or below really talks about the impact on the victim's family. I think that was a consideration that Judge Lisi took very seriously and that it helped weigh the balance of the 3553A against him. And, in fact, you could decide the case entirely on 3553A. I think it would come out the same. Even if you assume that extraordinary and compelling circumstances have been established because the judge did not abuse your discretion in deciding the balance against him and his contentions otherwise are basically a disagreement with how she weighed the factors. Since you raised that point, I'm just a little puzzled by how you're supposed to do the analysis vis-à-vis the extraordinary and compelling circumstances inquiry and the 3553A inquiry. If you've determined that there is an extraordinary and compelling circumstance, how can you then turn around and under 3553A say... I mean, I suppose if there was a dangerousness finding or something that could trump it, but how could you say it's an extraordinary and compelling circumstance, all things considered, but then under 3553A there's no reason to reduce the sentence if you're not making a dangerousness finding? Well, I think there's two answers to that. First, I think the analysis is somewhat convoluted in this case because the same factors that are being cited for extraordinary and compelling are also being cited. But in cases like Hunter and Andrews, where extraordinary and compelling is deemed to be something other than what 3553A is, it's a much cleaner analysis because let's take COVID, which is a classic motion for compassionate release. I have poor health. There's COVID in my prison. There's no vaccine available. That's extraordinary and compelling. But then the court says, well, despite that, you've only served five years of a 30-year sentence. But I guess here's the one thing that just seems... I mean, maybe this is leading into an argument you don't have to touch in this case. But as you know, some circuits have suggested that at least with respect to length of sentence and the change in law that results in a reduction in the length of the sentence, an engrossed conclusion that the mere fact of a change in the sentence can't be the basis for a compassionate release claim when the change in law was not made retroactive, which would be true of all first step motions under 404. But retail determination about a change in the law leading to a basis for extraordinary circumstances, given the particularities of a given case, can be. In that inquiry, which seems to be the Tenth Circuit's view and the Fourth Circuit's view, it seems to me that the 3553A analysis is kind of baked into the individualized nature of the argument for it being an extraordinary circumstance. Well, that's... I'm sorry. Yeah, so I guess I'm... Is your suggestion that you're not allowed to do that? Is the suggestion that extraordinary circumstances is kind of a categorical assessment? Is the nature of the argument an extraordinary circumstance? And then we look at the particular factors of the defendant? My suggestion... The government's position is that changes in the law can't be extraordinary because they happen all the time. I didn't mean to distract you. I'm trying to just get at the difference between an extraordinary circumstance claim and a 3553A claim. So if you do a COVID example or you do a family circumstances example, my child is dying and I haven't had a chance to be with the child, and you should allow me, or I have a health-related reason. In principle, that type of argument can be an extraordinary circumstance. Yes. And then you suggest then you just separately do a 3553A analysis, or is the right way to determine whether that claim of health is an extraordinary circumstance needs to be decided at the retail level, taking all factors into account, to determine whether the nature of that health claim is extraordinary? I think it has to be separate because, among other things, the statute sets it out into three parts. That's true, Ms. Zuri. The statute does set it out as separate, but in some cases it's going to be so overlapping as to be almost completely congruent. There will be some cases where doing the extraordinary and compelling analysis will encompass what amounts to the 3553A analysis. In other cases, it won't. It has to be done separately. I think that on a given set of facts, the defendant's health and rehabilitation and things, I can see where those would blend. That's time. But if I could wrap up here. But I think that in this case, the court did not abuse its discretion, even with an overlapping analysis, in concluding that the balance, there was no balance in his favor, there were no extraordinary circumstances in his favor, and for that reason I'd ask the court to affirm the decision below. Does that help? You had one question? Yes, one last question. Couldn't the court, or shouldn't Roper v. Simmons be considered at least persuasive in determining whether there's extraordinary or compelling circumstances, aside from the fact that the judge can then say, I'm still denying it? But shouldn't that be part of the analysis? Well, by saying that, you're basically saying that every single defendant who was young at the time they committed a crime should basically get a second look. And the statute doesn't say that. And also, if you look at the testimony that he introduced in support of that contention, the testimony says you cannot say for any particular defendant whether he was acting as the result of immaturity or planning. And in this case, the defendant was a leader. The facts don't suggest he was subject to the same sort of peer pressure as in the Cruz and Ramsey cases that he cites on appeal. So even if in some cases the Roper analysis might be more persuasive, this isn't one of them. Okay, thank you. Thank you. Thank you. That concludes argument in this case. Attorney Dimitri and Attorney Zurier, you can disconnect from the hearing at this time.